**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| ANTHONY PHILLIPS,<br><br>**Plaintiff**,<br><br>**v.**<br><br>WILLIS RE INC.,<br><br>**Defendant**. | **Civil No.** 20-1635 (FAB) |

**OPINION AND ORDER**

BESOSA, District Judge.

Before the Court is plaintiff Anthony Phillips ("Phillips")'s motion for preliminary injunction. (Docket No. 2.) For the reasons set forth below, Phillips' motion is **DENIED**.

**I. Background**

This litigation constitutes an attempt to circumvent a non-solicitation clause. Phillips is a reinsurance broker and consultant. (Docket No. 1 at p. 2.) For the past 25 years, he performed risk assessment and investment services on behalf of defendant Willis Re, Inc. ("Willis Re"), a reinsurance brokerage firm (hereinafter, "firm"). Id.

In 2008, the parties entered into the Restated Employment Agreement (hereinafter, "2008 agreement"). (Docket No. 2, Ex. 2.) This contract contains an "Employee Loyalty, Non-competition and Non-solicitation" clause. Id. For "valuable consideration," Phillips agreed that:

> for a period of **two years** following termination of [his] employment with [Willis Re], [Phillips] shall not . . . directly or indirectly solicit, accept, or perform, other than on [Willis Re's] behalf, treaty reinsurance brokerage business, facultative reinsurance brokerage business, claims administration business or other business performed by [Willis Re] from or with respect to (i) clients of [Willis Re] with whom [Phillips] had business contact or provided services to, either alone or with others, while employed by either [Willis Re] or any affiliate of [Willis Re] and, further provided, such clients were clients of [Willis Re] either on the date of termination of [Phillips] employment with [Willis Re] or within twelve (12) months prior to such termination (the "Restricted Clients") and (ii) active prospective clients of [Willis Re] with whom [Phillips] had business contacts regarding the business of [Willis Re] within six (6) months prior to termination of [Phillips'] employment with [Willis Re] (the "Restricted Prospects").

Id. at p. 3 (emphasis added). The "law of the state in which [Phillips] is assigned a regular office by [Willis Re]" governs the 2008 agreement. Id. at p. 4.

On November 11, 2020, Phillips resigned from Willis Re to pursue "a position with Guy Carpenter and Company, LLC," a rival reinsurance firm. (Docket No. 1 at p. 6.) Phillips anticipates that Willis Re clients will continue to "need and request his expertise in ongoing matters." Id. at p. 6.

The day after resigning from Willis Re, Phillips commenced this action. (Docket No. 1.) He requests that the Court issue a declaratory judgment to invalidate the 2008 agreement. Id. at p. 8. Phillips also moved for a temporary restraining order ("TRO") and preliminary injunction to preclude Willis Re from enforcing

the non-solicitation clause. (Docket No. 2.) The Court denied Phillips' request for a TRO, but reserved judgment regarding the preliminary injunction. Phillips v. Willis Re Inc., Case No. 20-1635, 2020 U.S. Dist. LEXIS 217027 (D.P.R. Nov. 18. 2020) (Besosa, J.). Willis Re responded to the preliminary injunction motion, and Phillips replied. (Docket Nos. 12 & 23.)

He asserts that the two-year non-solicitation provision is invalid for two reasons. First, Philips maintains that Puerto Rico law is applicable because "he resides and is domiciled" in this jurisdiction. (Docket No. 2 at p. 7.) The two-year non-solicitation provision is subject to stricter scrutiny pursuant to Puerto Rico jurisprudence. Second, Phillips argues that the choice of law provision is irrelevant because Florida law is inconsistent with Puerto Rico public policy. Both arguments are unavailing.

## II. Legal Standard

To determine whether preliminary injunctive relief is warranted, the Court considers: (1) the likelihood that the movant will succeed on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant equities (*i.e.*, the hardship that will befall Willis Re if the TRO issues contrasted with the hardship that will befall Phillips if the TRO does not issue); and (4) the effect of the Court's ruling on the public interest. Planned Parenthood League v. Bellotti, 641 F.2d 1006, 1009 (1st Cir. 1992).

The First Circuit Court of Appeals has "made it luminously clear that likelihood of success is the '*sine quo non*' of the preliminary injunction inquiry." Akebia Therapeutics, Inc. v. Azar, 976 F.3d 86 (1st Cir. 2020). If Phillips "cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." Shurtleff v. City of Bos., 986 F.3d 78, 86 (1st Cir. 2021) (citation and quotation omitted). Injunctive relief is "a matter for the discretion of the district court and is reversible, of course, only for an abuse of discretion." Bellotti, 641 F.2d at 1009.

## III. Discussion

Resolution of the preliminary injunction motion is contingent on the choice-of-law provision in the 2008 agreement. Phillips argues that Puerto Rico law controls the Court's analysis. (Docket No. 2.) Willis Re maintains, however, that the non-solicitation clause is governed by Florida law. (Docket No. 12.) Enforcement of the non-solicitation provision is uncertain pursuant to the former, but not the latter.

### A. Puerto Rico and Florida Set Forth Divergent Standards for the Duration of Restrictive Covenants

In Arthur Young & Co. v. Vega, the Puerto Rico Supreme Court addressed a noncompetition covenant similar to the non-solicitation provision in the 2008 agreement. 136 D.P.R. 157, 1994 PR Sup. LEXIS 268 (1994) (official translation). An

employment contract prevented an accountant from soliciting his employer's clients "for a period of two years after" termination. Id.[1] The accountant resigned, immediately "opened his own office," and solicited his former firm's clients. Id. Pursuant to Puerto Rico law, "noncompetition agreements, as a general rule, are valid." Id.[2] The Vega court held, however, that the two-year timeframe of the restrictive covenant was "excessive," "needlessly harmed [the accountant's] right to employment," and contravened public policy. Id. Because these defects permeated the non-competition clause, the Puerto Rico Supreme Court declared the provision null and void *in toto*. Id. Consequently, the two-year non-solicitation provision in this case is subject to invalidation pursuant to the holding in Vega.

In contrast to Puerto Rico jurisprudence, Florida courts have upheld two-year non-solicitation agreements pursuant to the law of that jurisdiction. See Imraan v. First Coast Cardiovascular

---

[1] "The official translations of many Puerto Rico Supreme Court cases cited . . . do not contain internal page numbers. Accordingly, we cannot include pin-point citation reference for those cases." Citibank Global Markets, Inc. v. Rodríguez-Santana, 573 F.3d 17 (1st Cir. 2009).

[2] The Vega court referred to the restrictive covenant as a "noncompetition clause." 136 D.P.R. 157. This Court employs the term "non-solicitation," however, because "competition" represents a broader range of activity. For instance, the non-solicitation clause permits Guy Carpenter to hire Phillips: Phillips may not, however, perform brokerage services for "Restrict Clients." (Docket No. 2, Ex. 2.); See, e.g., Corp. Techs., Inc. v. Harnett, 943 F. Supp. 2d 233, 239 (D. Mass. 2013) ("A non-competition agreement would prevent Harnett from working from a company competing with CTI, including OnX. The Non-Solicitation Agreement at issue prevents Harnett from doing business with certain specific clients, but allows OnX to employ him as a salesman otherwise.").

Inst., P.A., 252 So. 3d 287, 292 (Fla. Dist. Ct. App. 2018) (affirming the issuance of a TRO to enforce a two-year non-solicitation provision); Modern Enter. Solutions v. Deangelis, Case No. 14-7300, 2016 Fla. Cir. LEXIS 10057 at *2 (Fla. Cir. Ct. July 15, 2016) ("Plaintiff is entitled to a two year injunction prohibiting [its former employee] from soliciting Restricted Customers . . . pursuant to the terms of the Agreement and applicable Florida law."). Moreover, Florida law specifically provides that "a court shall presume reasonable in time any restraint 6 months or less in duration and shall presume unreasonable any restraint more than 2 years in duration." Fla. Stat. Ann. tit. 33, § 542.335(d)(1). Accordingly, the two-year non-solicitation provision adopted by Willis Re and Phillips is presumptively valid pursuant to Florida law.

**B. The Non-Solicitation Clause is Subject to Florida Law**

Phillips' motion for injunctive relief is doomed because success on the merits is doubtful. The choice-of-law provision in the 2008 agreement is determined by the jurisdiction "in which [Phillips] **is assigned** a regular office." (Docket No. 2, Ex. 2 at p. 4) (emphasis added). The sole inquiry for purposes of the choice of law provision is whether Willis Re assigned Phillips to the Miami office. A bedrock principle of contract interpretation dictates that, if the terms are "clear and unambiguous, they must be given their plain, ordinary and popular meaning." John Hancock

Life Ins., Co. v. Abbott Labs., 863 F.3d 23, 37 (1st Cir. 2017) (citation and quotation omitted). The 2008 agreement endows Willis Re with the discretion to assign Phillips an office. Consequently, Willis Re possesses the authority to determine the choice of law. Both parties are sophisticated and well-acquainted with reinsurance industry standards. They bargained and exchanged valuable consideration for this arrangement. (Docket No. 12, Ex. 2 at p. 2.) The 2008 agreement has "legal force between the contracting parties, and must be fulfilled in accordance with their stipulations." Laws P.R. Ann. tit. 31, § 2994. That the choice of law is no longer advantageous to Phillips is no reason to disregard the clear contractual language.

Phillips purports that his "regular office location was in Puerto Rico." (Docket No. 23 at p. 3.) This allegation is incorrect. Willis Re does not have an office in Puerto Rico. The Florida office is, however, located at 1450 Brickell Avenue in Miami: The same office that Phillips "established" for Willis Re in 1994. (Docket No. 12, Ex. 2 at p. 2; Docket No. 2, Ex. 1 at p. 1.) According to Willis Re, "every [employee], including Phillips, is assigned a single office location." Id. at p. 7. During Phillips' tenure at Willis Re, the firm assigned him to the Miami office. Id. Despite his recent relocation to Puerto Rico, the signature block in his e-mail correspondence contains the address for the Willis Re office in Miami. Id. at p. 8. Phillips'

information on LinkedIn, a professional networking platform, states that he resides and works in Miami. Id. at p. 9.

Ultimately, the minutiae of Phillips's activities in Puerto Rico constitute extrinsic evidence that only serves to obscure the relevant inquiry. The 2008 agreement is unambiguous. The law of the jurisdiction where Willis Re assigned Phillips a "regular office" is dispositive. (Docket No. 2, Ex. 2 at p. 4.) Willis Re assigned Phillips to the Miami office: thus, Florida law is applicable. The two-year duration of the non-solicitation clause is consistent with Florida law and appurtenant precedent. Consequently, Phillips has failed to demonstrate a likelihood of success on the merits. This failure is fatal to the preliminary injunction motion. See Akebia Therapeutics, 976 F.3d at 100 (holding that because the movant "failed to carry its burden of showing that it is likely to succeed on the merits of its claims, we need not address the other elements of the preliminary injunction framework") (citation omitted).

Phillips conflates the concept of an "assigned office" with his physical presence. He attempts to invoke Puerto Rico law by claiming that: (1) he rented an apartment in San Juan, Puerto Rico from January, 2019 to May, 2019, (2) on May 19, 2019, he purchased a residential property in Old San Juan, Puerto Rico, (3) Phillips traveled extensively while the Old San Juan property underwent renovations, living in various hotel rooms, (4) Phillips' wife

remained in Florida, (5) the Commonwealth of Puerto Rico granted Phillips an Act 22 tax exemption on March 10, 2019, (6) Phillips serves as the British Honorary Counsel for Puerto Rico and the Virgin Islands, (7) "Willis Re leadership were fully aware of [his] move to Puerto Rico," (8) Phillips instructed a Willis Re payroll specialist to withhold Puerto Rico taxes, but "ultimately" withdrew this request, (9) Phillips paid an estimated tax of $205,000 to the Puerto Rico Treasury Department on July 15, 2020, (10) Phillips' largest clients are based in Puerto Rico, and (11) Phillips has visited Puerto Rico since the 1980s. (Docket No. 23, Ex. 1.)

The location of Philips' residence need not correspond to the location of his office. Generally, "the type of agreement that can be reached by contracting parties is only limited by [their] imagination and their will to contract." Vega, 136 D.P.R. 157. Had Willis Re and Phillips intended to tether the choice of law provision to the location of the latter's residence, they would have done so.

**C. The Conflict of Law**

Choice of law provisions are valid in Puerto Rico, subject to a number of exceptions not relevant to this action. Shelly v. Trafalgar House Pub. Co., 918 F. Supp. 515, 521 (D.P.R. 1996) (Domínguez, J.) (citation omitted). Phillips contends, however, that "Puerto Rico law must apply" irrespective of the 2008

agreement because Florida law conflicts with the "fundamental considerations of public order [in this jurisdiction]." Docket No. 2 at p. 8; citing Walborg Corp. v. Superior Court, 104 D.P.R. 184 (1975), 1975 P.R. Supp. LEXIS 2250 (official translation), reversed on other grounds World Films, Inc. v. Paramount Pictures Corp., 125 D.P.R. 352 (1990), 1990 P.R. Supp. LEXIS 130 (official translation). The Court disagrees.

Conflicts of law are subject to the principles of the forum state. Foisie v. Worcester Polytechnic Inst., 967 F.3d 27, 41 (1st Cir. 2020) (applying local law to resolve a conflict between Massachusetts and Connecticut law). Accordingly, the Court refers to Puerto Rico law in determining whether to enforce the non-solicitation provision. Phillips shoulders the burden of demonstrating that Florida law is inapplicable. American States Ins. Co. v. Synod of the Russian Orthodox Church Outside of Russia, 335 F.3d 493, 496 n.3 (5th Cir. 2003).

In Walborg Corp. v. Superior Court, the Puerto Rico Supreme Court held that public policy considerations may, in certain circumstances, supersede an otherwise valid choice of law provision. 104 D.P.R. 184. José Vigo ("Vigo") served as the Puerto Rico distributor for a New York corporation. Id. The employment agreement provided that "any controversy arising under or in relation to this contract shall be settled . . . in accordance with the law of New York." Id. Subsequently, the corporation

terminated Vigo. Id. He commenced a civil action pursuant to Puerto Rico Law 75, P.R. Laws Ann. tit 10, sections 278 *et seq*. ("Law 75"). This statute "protect[s] the interest of commercial distributors working in Puerto Rico." Gemco Latinoamericana, Inc., v. Seiko Time Corp., 623 F. Supp. 912, 918 (D.P.R. 1985) (Laffitte, J.); R.W. Int'l Corp. v. Welch Foods, 88 F.3d 49, 51 (1st Cir. 1996) ("The Puerto Rico Legislature enacted Law 75 believing that traditional contract-law principles had not afforded local dealers adequate protection from arbitrary dealer-contract terminations by larger, primarily mainland-based principals which normally enjoy a superior bargaining position."). Puerto Rico prohibits corporations from terminating distribution contracts without just cause. P.R. Laws Ann. tit. 10, § 278. On the contrary, New York adopted a more *laissez faire* approach to contract law. 104 D.P.R. 184. Accordingly, Puerto Rico favored Vigo to the detriment of the corporation.

The Walborg court invalidated the employment agreement, holding that New York law violated "public policy clearly considered fundamental to the Legislature of Puerto Rico." 104 D.P.R. 184. This rationale rested in part on the Restatement (Second) of Conflict of Laws ("Restatement"). Id.; see Pinson Davies Grp., LLC v. Costonis, Case No. 10-1166, 2011 U.S. Dist. LEXIS 168247 *9 (D.P.R. Oct. 14, 2011) ("In contract and tort cases, Puerto Rico law follows the Restatement (Second) of Conflict

of Laws.") (McGiverin, Mag. J.) (citing In re San Juan Dupont Plaza Hotel Fire Litig., 745 F Supp. 79 (D.P.R. 1990) (Acosta, J.). The Restatement states that the designated law is subject to nullification if the agreement:

> would be contrary to a fundamental policy of a state which has a **materially** greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement § 187(2)(b) (emphasis added).[3] Walborg contains no analysis comparing the relevant state interests, striking the choice of law provision without considering the public policies of New York. 104 D.P.R. 184 (noting only that New York had "no legislation comparable to Act No. 75").

In Waithaka v. Amazon.com, Inc., the First Circuit Court of Appeals addressed a conflict of law pursuant to the Restatement, assessing the competing interests set forth by the Massachusetts and Washington legislatures and judiciaries. 966 F.3d 10, 34-35 (1st Cir. 2020) (noting that the trial court "had little trouble finding, in a dispute where the Commonwealth's fundamental interest in avoiding class waivers was at stake, the Commonwealth

[3] Choice of law provisions are also invalid if "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice." Restatement § 187(2)(a). Florida and the 2008 agreement are substantially related to each other. Consequently, the sole recourse available to Phillips is the public policy standard set forth in section 187(b)(2) of the Restatement.

had a 'materially greater interest' than [Washington].") This Court will follow suit. To do otherwise would render Puerto Rico policy supreme, restrain the freedom of contract, and denigrate the interests held by other jurisdictions.

**1. The Public Policy Considerations in Puerto Rico and Florida**

To prevail, Phillips must establish that Puerto Rico possesses a materially greater interest in eliminating the non-solicitation clause than Florida has in upholding the 2008 agreement. See Emery v. Merrimack Valley Wood Prods., Ind., 701 F.2d 985, 989 n.4 (1st Cir. 1983) ("Massachusetts law, however, will not be applied, if to do so would violate some fundamental policy of New Hampshire, a state which has a materially greater interest in the subject matter of the contract and the state whose law would apply if not for the contract's specification of Massachusetts law."). As a preliminary matter, the Court notes that the parties signed the 2008 agreement more than a decade before this litigation and Phillips' alleged relocation to San Juan. Willis Re and Phillips executed the contract in Florida, Phillips reported to the Miami office and lived in that jurisdiction. The record is devoid of evidence suggesting the that the 2008 agreement related in any way to Puerto Rico. The Court is unaware, and Phillips does not cite, any precedent in

which the public policy of a state retroactively invalidated a choice of law provision.

Puerto Rico courts assess restrictive covenants in a nuanced and fact-specific manner. Reasonable restrictions satisfy three requirements: they (1) "must be necessary to protect a legitimate interest of the employer," (2) "not impose undue hardship on the employee," and (3) "not be exceedingly injurious to the public." Vega, 136 D.P.R. 157. The geographic scope, duration, client profile, and type of services subject to the restrictive covenant "should also be considered." Id. The Vega court tailored its analysis to a discrete industry, emphasizing the need to "understand the nature of the services offered by a certified public accountant ["CPA"]." Id. After reviewing the duties of a CPA and the firm's interest in suppressing competition, the Puerto Rico Supreme Court surmised that "it could take up to one year [for Arthur Young] to regain the client's trust." Id. In the Vega court's estimation, the two-year restrictive covenant "overprotect[ed] Arthur Young, and, thus, needlessly harm[ed] Vega's right to employment and the right of clients to freely choose a professional whom they trust." Id. The Puerto Rico Supreme Court relied exclusively on the policy determinations of the judiciary. Id. compare with Walborg, 104 D.P.R. 184 (citing the statement of motives set forth by the Puerto Rico legislature in Act 75). The Vega court did not, however, set forth broad

policy pronouncements or a categorical ban on two-year restrictive covenants.

Florida common law once disfavored restrictive covenants. Marx v. Clear Channel Broad, Inc., 887 So. 2d 405, 407 (Fla. Dist. Ct. App. 2004) (citing Love v. Miami Laundry Co., 118 Fla. 137, 160 (1934) (noting that "courts are reluctant to uphold contracts whereby an individual restricts his right to earn a living at his chosen calling"). In response to this hostility, the Florida legislature enacted section 542.335, authorizing the enforcement of reasonable restrictive covenants. Id. see Ch. 28048, Laws of Fla. (1953). In 1996, the Florida legislature amended section 542.335, "substantially expanding and clarifying the noncompete statute governing validity and enforcement of contracts in restraint of trade." Corp. Express Office Prods. v. Phillips, 847 So. 2d 4-6 n.2 (2003) (citing Fla. S. Comm. Judiciary, SB 282 (1996)).

Modern public policy in Florida "favors enforcement of reasonable covenants not to compete." Winmark Corp. v. Brenoby Sports, Inc., 32 F. Supp. 3d 1206, 1224 (S.D. Fla. 2014) (citation omitted). Pursuant to section 542.335:

> A court shall construe a restrictive covenant in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement. A court shall not employ any rule of contract construction that requires the court to construe a restrictive covenant narrowly, against the restraint, or against the drafter of the contract.

Fla. Law Ann. tit. XXXIII, § 542.335. Legitimate business interests include "substantial relationships with specific prospective or existing customers, patients, or clients," and "goodwill associated with an ongoing business or professional practice." Id. Moreover, restrictive covenants "**more** than two years in duration" shall be "presum[ed] unreasonable." Id. (emphasis added). The Florida legislature prohibited courts from refusing to enforce:

> an otherwise enforceable restrictive covenant on the ground that the contract violates public policy unless such public policy is articulated specifically by the court and the court finds that the specified public policy requirements substantially outweigh the need to protect legitimate business interests or interests established by the person seeking enforcement of the restraint.

Id. Accordingly, Florida law conveys a fundamental interest "in the protection and enforcement of contractual rights." Family Heritage Life Ins. Co. of American v. Combined Ins. Co. of America, 2021 Fla. App. LEXIS 4191 *10 (Dist. Ct. App. 2021) (citation omitted).

The Court is cognizant that the Puerto Rico judiciary identified an interest against "excessive" restrictive covenants. 136 D.P.R. 157. This policy is not, however, a "materially greater interest" than the policies espoused by the Florida legislature. Restatement § 187(b); see Baxter Int'l, Inc. v. Morris, 976 F.2d 1189, 1196-97 (8th Cir. 1992) (affirming the application of a

choice of law provision because the "interest of California in protecting Morris from the shackles of his noncompete covenant with Baxter after he has left the state is no more compelling than the interest of Illinois in protecting Baxter from competition with Morris"); Aspect Software, Inc. v. Barnett, 787 F. Supp. 2d 118, 126-27 (D. Mass. 2011) ("California's [interests] in pursuing its non-fundamental policy would not materially outweigh Massachusetts' interest in ensuring that Massachusetts contracts are enforced"). The Florida legislature purposefully reversed the judiciary's reticence toward restrictive covenants, prioritizing the protection of legitimate business interests and the enforcement of valid contracts. The public policy considerations set forth by the Puerto Rico Supreme Court in Vega do not outweigh the statutory decrees of the Florida legislature. Consequently, the choice of law provision in the 2008 agreement is legally sound and applicable in this action.

Phillips cites Vega for the proposition that the two-year non-solicitation provision "needlessly restrains the right to employment of a Puerto Rico resident and domiciliary." (Docket No. 2 at p. 5.) He posits that the clause is "facially null and void." Id. This argument misconstrues Vega and fails to account for the public policy interests set forth by the Florida legislature in section 543.335. Two-year restrictive covenants are not *per se* invalid pursuant to Puerto Rico jurisprudence. The

Vega court merely held these provisions must satisfy certain requirements. 136 D.P.R. 157.

Lastly, Phillips avers that Smarte Carte, Inc. v. Colón is directly on point." (Docket No. 2 at p. 9) (citing 47 F. Supp. 2d 183 (D.P.R. 1999) (Laffitte, J.)). In Smarte Carte, the parties designated "Minnesota law as the governing law of the contract." Id. at 186. Because Minnesota law conflicted with Puerto Rico public policy, the Smarte Carte court applied this jurisdiction's law despite the choice of law provision. Id. Smarte Carte is distinguishable, however, because the 2008 agreement incorporates Florida law. Puerto Rico may have a materially greater interest in preserving the right to compete *vis-à-vis* Minnesota, but not in relation to Florida.

**IV. Conclusion**

For the reasons set forth above, the Court **DENIES** Phillips' motion for a preliminary injunction. (Docket No. 2)

Because no other relief would be appropriate, the complaint is **DISMISSED** with prejudice. (Docket No. 1.) Judgement shall be entered accordingly. The motions to dismiss and motion for expediated discovery are **MOOT**. (Docket Nos. 9, 13 & 22.)

In accordance with the judgement entered on April 19, 2021, this case is now closed for administrative purposes.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, April 19, 2021.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE